Burton, J.,
delivered the opinion of the court.
The complainant is the child and legatee of John H. McHaney, who died in 1856, having made a last will and testament wherein he nominated William C. McHaney executor thereof. William C. qualified as such executor. The provision of the will, about *536 which however, there is no controversy, provided in substance that the defendant Nancy T. McNeilly, who was his wife, should have the whole of his estate during her widowhood, that on her marriage one-half of the estate should go to the complainant Fre-donia, and the other half on the death of the defendant Nancy T. Sometime in 1863 the defendant intermarried with her co-defendant William H. McNeilly, and in 1867 the complainant filed this bill against her mother to have an account of one-half of the estate of her father John H. McHaney. The complainant Fredonia E. was a minor when the bill was filed, and sued by William C. McHaney, who styles himself her guardian and next friend. But, although, in the caption of the bill he is styled simply guardian and next friend, he makes throughout the bill averments of his actings and doings as executor of John H. McHaney. He avers that he fully administered and settled up the estate, and says that amongst other property belonging to it, he paid and delivered over to defendant Nancy T. the widow and legatee for life, the sum of $2,314.64, and the sole matter now in litigation is, whether respondents are liable for $1,157.32 the one half of the sum which William C. McHaney alleges she gave her receipt for on the 25th of December, 1866. The marriage of respondent Nancy T. having terminated her interest in one-half of the estate, if this sum of money is in the hands of respondents, then no reason is perceived why they could not be called to account for it. But the defendants posi *537 tively deny that one dollar of this money ever came into the, hands of respondent Nancy. And, although, the executor William C. McHaney, procured her to sign a receipt for the §2,314.64, it is certain that he never did pay her one dollar of it in fact. The truth of the transaction is, that at the time the receipt was given, William C. McHaney had in his hands as executor of respondent’s husband, that amount of money and at the same time, he and one Hall were the assignees in trust of one C. H. McHaney, and amongst other property conveyed in trust to them to pay debts were three slaves. This executor immediately set about procuring the consent of respondent Nancy to take these three slaves in lieu of the §2,314.64. He advised her himself to take the negroes, and sent several parties to her to induce and pur-suade her to take the three negroes in lieu of the money. This she was finally persuaded to do, giving as a reason for it that she thought it would be best for her child the present complainant, and McHaney says, she bought the negroes and directed him to pay the §2,314.64 for them. It may be that the form of a sale and purchase of these slaves by respondent was gone through, bur when the substance of it is looked at it is nothing more nor less than a direct misapplication of the funds of the testator by McHaney as executor. Indeed, we think he shows a consciousness that he was going through a mere form, for he states that he paid over the money to his co-trustee Hall, when he was just as much bound for the money as trustee of C. I). McHaney as was Hall *538 himself. The negroes however, went into the possession of Mrs. McNeilly, who took care of them until by the events of the war they ceased to be property. Now it is patent from the statement of facts that this guardian is liable to his ward for this 11,157.32, not only so, but he is liable to his ward for the forthcoming of the whole $2,314.64 at the death of the defendant Mrs. McNeilly, and it cannot escape observation that he is pressing this suit to shield himself from responsibility, and we think that it is not out of place to remark that, he should not have been allowed to prosecute this suit as guardian, when it is plain that his interests are antagonistic to his ward’s. His -liability is hardly, if at all denied here, but it is said that the respondents are also liable to the complainant Fredonia, and a very ingenious argument is made to sustain that position. It is said in the first place that Nancy T. having the exclusive control of all the means and property of her first husband’s estate, instructed the executor to pay out the money for these three slaves. Aside from the fact that respondent Nancy’s concurrence in this transaction, as we think, was merely nominal, we do not concede as a proposition of law that she had any right as against the executor to control one dollar of this $2,314.64. It was the plain duty of the executor to retain this fund, paying the interest of it to respondent as life-tenant, or if he let her have the corpus of the fund it was his imperative duty to take bond to secure its forthcoming at her death, for the benefit of his present ward. But while it is *539 true that respondent. Nancy T. had no right to control the corpus of this fund, it is also true that if the executor saw proper to place it in her hands, she had the clear right to use and invest it as she saw proper, and if she had of her own accord invested it in these three slaves, the complainant, as remainder-man, would have acquired no interest in the slaves. The respondent, on this hypothesis, would have been the absolute owner of the slaves; she might have sold them or disposed of them as she saw proper. The utmost interest that complainant would have acquired in the property, was to acquire a lien on them and to have them held simply as a security for the corpus of the fund, at the termination of respondent Nancy’s interest. Respondent, neither as to these slaves, nor as to the fund, occupied the relation of trustee for complainant. They were both cestui que trusts, and the executor alone, was the trustee. But if respondent is to be regarded as trustee, then, clearly upon that assumption she could not be held liable. Eor if complainant, was in. equity, the owner of these Slaves when they perished as property, by the act of government and not by the fraud or fault of respondent, then the maxim “res per it domino” would apply and respondent would lose her life estate, and complainant her remainder interest, in the slaves.
The only case similar in its facts to the one in hand from our own books, -is Vaden v. Vaden, 1 Head, 444. That case only settles the principle we have already announced, that under a bill framed for the purpose and showing danger of the loss of the *540 fond, complainant coiild have had the slaves held as security for the fund used in its purchase. But, it settles nothing as to the direct liability of respondents for the money. We have already expressed the opinion that respondent cannot be held liable as trustee. The remaining question is, did she by reason of the facts become debtor, and liable to account for these funds? This question we answer in the negative. Respondent was at liberty to use or invest the fund as she saw proper, subject only to the condition that she could not wilfully do anything to destroy or endanger the right of complainant as remainder-man. The exesutor remained the debtor just as much as if he had held the' fund or bad taken bond for its forthcoming, and when he induced respondent to take possession of the slaves, "we have no doubt he looked to. them as security for the money.
The authority of the case of Jones v. Simmons, 7 Iredell Eq., has been pressed upon us. In that case the Supreme Court of North Carolina held when an executor placed property, which he ought to have converted into money, in the' hands of a life-tenant who used and consumed it, that although the executor was liable, the remainder-man could pass by the executor and call the life-tenant directly to account for the value of his interest. The case, we do not think is applicable here, for respondent did not use or consume the property of complainant; the money, being her property, not the negroes. But the most that can be said is, that with the avowed purpose of *541 bettering her child’s condition, she assented to an investment of the fund in a , species of property that perished by inevitable and unforeseen disasters. We admit that in the case cited, the Supreme Court of North Carolina further held under the facts of that case, that the life-tenant was liable to the executor. But under the facts of this case we do not admit the application of the principle.
In an abstract of a recent English case, it is said that where trustees who had no authority to invest trust funds upon mortgage so invested the same at the instance of the cestui que trust for life, for .the purpose of increasing his income and a loss was occasioned, the trustees were held liable to make it good in the first instance at the application of the remainder-man. But the cestui que trust for life was declared bound to the extent of his actual receipts to recoup the trustees and the life-estate impounded for the purpose, but in a subsequent review of the case the decision was said to' have turned on the ground that the trustees had not exercised their own discretion, but allowed themselves to be swayed by the entreaties of the tenants for life. Hill on Trus., 585, note 2. The exact converse of this proposition is presented by the case in hand, and we are unable to' see that this respondent swayed by the counsels of the executor, as she was, and acting in the utmost good faith, can be called to account merely for acceding to an investment which proved unfortunate. And we hold that the guardian of complainant is bound to make good this loss to her, and not the respondent.
*542 The decree of the Chancellor is affirmed, and the hill dismissed, with costs to be paid by William C. MoHaney, personally.